**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BARBARA L. BROWN,

        Plaintiff,

vs.                                               Case No. 3:05-cv-141-J-32HTS

CUNNINGHAM LINDSEY U.S., INC.,

        Defendant.

**ORDER**

This case is before the Court on Plaintiff Barbara L. Brown's Motion for Remand. (Doc. 6). Defendant Cunningham Lindsey U.S., Inc. ("Cunningham Lindsey") filed a response. (Doc. 8). The issue presented is whether the amount in controversy exceeds $75,000 as required by 28 U.S.C. §§ 1332(a) and 1441(a).

**I. Background**

Plaintiff Barbara L. Brown filed her Complaint in the Circuit Court in and for Duval County, Florida on January 20, 2005. (Doc. 2). The Complaint alleges that Ms. Brown was employed by Cunningham Lindsey from approximately March 1998 until December 5, 2003. (Id. at ¶ 6). On October 3, 2002, Ms. Brown filed sex discrimination charges against Cunningham Lindsey, which she dismissed on April 8, 2003, after entering into a confidential settlement agreement. (Id. at ¶¶ 7-8). According to Ms. Brown, Cunningham Lindsey agreed as part of the settlement agreement not to retaliate against her based upon her charge of discrimination and

to provide her with "adjuster training in property and workman's compensation at Vale National within six months of execution of the [s]ettlement [a]greement, subject to course availability and office coverage." (Id. at ¶¶ 9-10).  Cunningham Lindsey, however, never provided Ms. Brown with the adjuster training. (Id. at ¶ 11). Additionally, as alleged by Ms. Brown, Cunningham Lindsey continued to subject her to discrimination based upon her sex. (Id. at ¶ 12).  Finally, on December 5, 2003, Cunningham Lindsey terminated Ms. Brown's employment. (Id. at ¶ 18).  Ms. Brown claims that her termination was based on her sex and was in retaliation for her prior complaint of discrimination. (Id.).

Ms. Brown's Complaint, which seeks damages in excess of $15,000, alleges three causes of action. (Id. at ¶¶ 1, 24-40). The first two counts allege violations of the Florida Civil Rights Act ("FCRA") based upon sex discrimination (Count I) and retaliation (Count II). (Id. at ¶¶ 24-35).  Count III alleges breach of contract, claiming that Cunningham Lindsey breached the settlement agreement when it failed to provide Ms. Brown with adjuster training and when it subjected her to a retaliatory discharge. (Id. at ¶¶ 36-40).  In the ad damnum clause, Ms. Brown requests "relief in the form of economic damages and lost wages, backpay [sic] and frontpay [sic], compensatory and emotional distress damages, injunctive relief and reinstatement, punitive damages, prejudgment interest, attorneys' fees and costs, and any other such relief that the Court deems just and proper." (Id. at ¶ 40).  Cunningham Lindsey

removed the case to this Court on February 9, 2005. (Doc. 1). Ms. Brown now requests that the Court remand the case to the state court. (Doc. 6).

## II. Discussion

### A. Motion to Remand Standard

It is undisputed that the parties are completely diverse. The only disagreement is whether Cunningham Lindsey has demonstrated that the amount in controversy exceeds the $75,000 jurisdictional amount. "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Id. If, however, it is not apparent from the face of the complaint that the jurisdictional amount is met, the Court looks to the notice of removal and "may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal." Id. The Eleventh Circuit has emphasized that "the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000) (quotations and citation omitted). Additionally,

3

"removal statutes are construed narrowly" and "uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

### B.  The Parties' Contentions

Here, it is not apparent from the face of the Complaint that this case exceeds the jurisdictional amount.  The Court therefore turns to Cunningham Lindsey's Notice of Removal (Doc. 1), which provides several arguments in support of its claim that this case exceeds the amount in controversy requirement.  First, Cunningham Lindsey asserts that Ms. Brown "is seeking damages that exceed $15,000, exclusive of prejudgment interest, costs and attorneys fees, with respect to each of the three separate Counts set forth in [her] Complaint," and that in at least one decision under the FCRA a jury awarded the plaintiff "$253,430 in damages for past and future lost wages, mental anguish, and in punitive damages."  (Doc. 1 at ¶ 8(a)).  Second, Cunningham Lindsey, relying on awards in other cases, claims that Ms. Brown's claim for attorneys' fees could alone exceed the $75,000 jurisdictional amount.  (Id. at ¶ 8(b)).  Finally, Cunningham Lindsey argues that there is no reason to believe that Ms. Brown is seeking less than the full amount of punitive damages available under the FCRA ($100,000).  (Id. at ¶ 8(e)).  Adding together the $15,000 for each count of her complaint, $75,000 for her attorneys' fees, and $100,000 for her punitive damages claim, Cunningham Lindsey's Notice of Removal calculates Ms. Brown's probable recovery – if all of her claims are proven – at $220,000.  (Id. at ¶ 9).

Ms. Brown's Motion for Remand argues that Cunningham Lindsey's evidence is insufficient to demonstrate that the amount in controversy is met. (Doc. 6 at 5). Instead, Ms. Brown asserts that a proper determination of the amount in controversy would rely on a calculation of her back pay and other damages resulting from her FCRA and breach of contract causes of action. (Id.). In an affidavit attached to her Motion for Remand, Ms. Brown avers that at the time she was terminated, she was earning $35,000 per year, (Id., Ex. 1 at ¶ 3), and that during 2004 she mitigated her damages by earning $17,050.00 from other sources. (Id. at 3, Ex. 1 at ¶ 9). Ms. Brown also estimates that the "course fees, travel and accommodation expenses associated with the agreed to training" are valued at $6,624.50. (Id., Ex. 1 at ¶ 7). Furthermore, Ms. Brown argues that there is no basis for Cunningham Lindsey's claim that her attorneys' fees will exceed $75,000 because, to this point, she has only accrued $4,000-$5,000 in attorneys' fees. (Id. at 5). Finally, Ms. Brown claims that the Court should not consider her demand for punitive damages at this time because it is too speculative, and points out that while she is seeking damages for "mental anguish, distress, humiliation, loss of dignity, great expense, and loss of enjoyment of life, she has not been diagnosed with a psychiatric condition and she was not forced to incur medical expenses as a result of [Cunningham Lindsey's] illegal conduct." (Id. at 3-4, 6).

### C. The Court's Decision

Before determining whether the amount in controversy requirement is met here, the Court must first decide whether it may properly consider Ms. Brown's affidavit. Cunningham Lindsey argues that the Court should disregard Ms. Brown's affidavit because "it is an improper post-removal effort to reduce the amount in controversy below the $75,000 threshold so as to avoid federal jurisdiction." (Doc. 8 at 7).[1] In

---

[1] Cunningham Lindsey asserts in several places in its response that it "did not have the benefit of [Ms. Brown's] self-serving testimony on February 11, 2005, when it removed this action to this Court," and that "[p]laintiff fails to comprehend the proper burden confronting [d]efendant on February 11, 2005." (Doc. 8 at 7, 9, 15). "[T]he thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount." In re Willis, 228 F.3d 896, 897 (8th Cir. 2000). See also Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992); Field v. Nat'l Life Ins. Co., No. 8:00-CV-989-T-24TBM, 2001 WL 77101, at *8 (M.D. Fla. Jan. 22, 2001) (where the complaint merely alleged damages in excess of $15,000, defendant did not have sufficient information to determine that the federal jurisdictional amount was satisfied until receipt of plaintiff's responses to defendant's interrogatories); Essenson v. Coale, 848 F. Supp. 987, 989 (M.D. Fla. 1994) (holding that the defendants' failure to remove the case within thirty days of receipt of the complaint did not prohibit them from removing the case where the initial complaint only alleged damages in excess of $15,000 and thus did not indicate that the jurisdictional amount was satisfied). Here, instead of removing the complaint upon receipt, Cunningham Lindsey could have filed an answer and served requests for admissions and interrogatories on Ms. Brown concerning her damages. Then, after receiving Ms. Brown's responses, Cunningham Lindsey could have better determined whether the case was removable. In so doing, Cunningham Lindsey would not have waived its right to remove by litigating in state court. See Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP, 365 F.3d 1244, 1246 (11th Cir. 2004) (quoting Somoano v. Ryder Sys., Inc., 985 F. Supp. 1476, 1478 (S.D. Fla. 1998)) ("[T]he Federal Rules of Civil Procedure contemplate the filing of a responsive pleading prior to the removal of a case."); Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998) ("[A] defendant who actively invokes the jurisdiction of the state court and

deciding whether the amount in controversy requirement is met, district courts may consider post-removal evidence when necessary so long as that evidence is relevant to the amount in controversy at the time of removal. Sierminski, 216 F.3d at 949. Here, Ms. Brown's affidavit includes her salary while she was employed at Cunningham Lindsey (which was not provided by defendant's Notice of Removal), a valuation of the expenses associated with the adjuster training course, and information about her earnings from other sources during 2004. (Doc. 4, Ex. 1). As discussed infra, these calculations aid the Court in determining whether the jurisdictional amount is satisfied in this case.

The Court now turns to whether this case satisfies the $75,000 jurisdictional amount. Ms. Brown's Complaint requests relief in the form of back pay. (Doc. 1 at ¶ 40). "Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA] because the Florida Act was patterned after Title VII." MacLean v. City of St. Petersburg, 194 F. Supp. 2d 1290, 1301 (M.D. Fla. 2002). Additionally, at least one Florida court reviewing a back pay award under the FCRA has considered cases involving back pay awards under Title VII. See Champion Int'l Corp. v. Wideman, 733 So. 2d 559, 563 (Fla. 1st DCA 1999). Under

---

interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove."); Landstar Sys., Inc. v. Cincinnati Ins. Co., No. 3:04-cv-1346-J-32MCR, Doc. 17 (M.D. Fla. Apr. 6, 2005) ("In order to waive the right to removal . . . a defendant must proceed in state court despite having notice of its right to remove the case.").

Title VII, a successful plaintiff is "presumptively entitled to back pay," which is calculated from the date of the adverse employment action until the date of judgment. Nord v. United States Steel Corp., 758 F.2d 1462, 1472-73 (11th Cir. 1985). To determine the amount in controversy in an FCRA case, one district court within the Eleventh Circuit considered the potential back pay award from the date of the adverse employment action until the proposed trial date. See Destel v. McRoberts Protective Agency, Inc., No. 03-62067-Civ., 2004 WL 746293, at *4 n.3 (S.D. Fla. Feb. 17, 2004).

Ms. Brown earned $35,000 a year at Cunningham Lindsey at the time her employment was terminated on December 5, 2003. (Doc. 6, Ex. 1 at ¶ 3). Ms. Brown also asserts that she mitigated her damages by earning approximately $17,050 from other sources during 2004. (Id. at ¶ 9). Cunningham Lindsey argues that the Court should not consider Ms. Brown's 2004 earnings when calculating the potential back pay award. (Doc. 8 at 10). However, "in calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." Richardson v. Tricom Pictures & Prods., Inc., 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004) (quotations and citation omitted). Additionally, Cunningham Lindsey ignores its nineteenth affirmative defense, which asserts that "[t]o the extent that [p]laintiff is attempting to assert claims under the [FCRA], any such are barred to the

8

extent that she has failed to mitigate any damage that she may have suffered." (Doc. 5 at 13). The Court will therefore consider Ms. Brown's 2004 earnings in determining the amount of a potential back pay award.  See Destel, 2004 WL 746293, at *3-4 (reducing an estimate of a potential back pay award under the FCRA by the amount the plaintiff earned from other sources following the termination of his employment in order to determine whether the jurisdictional amount was satisfied).

The Court places the value of Ms. Brown's back pay for the purpose of the amount in controversy determination at $40,636.90.  This figure was arrived at as follows: First, the Court calculated how much Ms. Brown would have made during the remainder of 2003 by multiplying her daily rate of pay ($95.89) times 26 (the number of days remaining in the month after her December 5, 2003 termination), which equals $2,493.15. Next, the Court added $17,950, which is the $35,000 Ms. Brown would have earned at Cunningham Lindsey during 2004 minus the $17,050 she earned from other sources.  Then, the Court estimated a trial date for this case.  This is a "Track Two" case, and the Court normally aims to try Track Two cases within twelve to eighteen months of filing. (Doc. 4).  This case was removed to this Court on February 9, 2005, so the Court presumed that the first day of trial would be February 14, 2006.[2]

---

[2] Although the Court could have chosen any trial date within the twelve to eighteen month range, the twelve month figure is used because it results in the lowest back pay figure.  This is consistent with the Eleventh Circuit's instruction that all uncertainties are to be resolved in favor of remand. Burns, 31 F.3d at 1095.  The Court used February 14, 2006, instead of February 9, 2006, because it made the back

Assuming that Ms. Brown's earnings at Cunningham Lindsey and her earnings from other sources would remain the same, the Court added an additional $17,950 for 2005.  Additionally, the Court added $1,495.83 ($17,950 divided by 12) for January 2006 and 747.92 ($1,495.83 divided by 2) for February 1-14, 2006.

In addition to back pay, Ms. Brown also seeks to recover the value of the adjuster training course that Cunningham Lindsey allegedly failed to provide.  (Doc. 6 at 3, Ex. 1 at ¶ 7).  Ms. Brown's affidavit asserts that the "course fees, travel and accommodation expenses" associated with the training are valued at $6,624.50.  (Id.).  Cunningham Lindsey did not provide an estimate for the value of the program.  Thus, the Court adds $6,624.50 to the estimated back pay for a total of $47,261.40.

Ms. Brown's complaint also seeks attorneys' fees.  (Doc. 2 at ¶ 40).  "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy."  Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1265 (11th Cir. 2000).  The FCRA provides that "[i]n any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs."  Fla. Stat. § 760.11(5).  Cunningham Lindsey, citing to several Title VII cases where the attorneys' fee award alone exceeded $75,000, argues that Ms. Brown's demand for attorneys' fees satisfies the

---

pay calculation easier and had only a de minimis impact on whether the amount in controversy is satisfied.

amount in controversy requirement. (Doc. 8 at 14-16). Cunningham Lindsey, however, has failed to demonstrate that the cases it relies upon are factually similar to this case. Ms. Brown, on the other hand, claims that she has incurred approximately $4,000-$5,000 in attorneys' fees at this time. (Doc. 6 at 5). She suggests, citing Destel, 2004 WL 746293, at *4, that "[t]o account for any increase associated with discovery and trial it may be reasonable to triple that initial number which [is] based on the fees at the time of removal" for a total of $15,000. (Doc. 6 at 5) (emphasis removed). The Court is somewhat skeptical that $15,000 is a fair estimate of Ms. Brown's attorneys' fees through trial given that she has already incurred approximately $5,000 in fees before the start of discovery. However, given that Cunningham Lindsey has provided no basis for its estimate of $75,000 in attorneys' fees, and that all uncertainties are to be resolved in favor of remand, the Court accepts Ms. Brown's $15,000 estimate. The amount in controversy now totals $62,261.40.

Ms. Brown's Complaint also demands reinstatement and front pay. (Doc. 2 at ¶ 40). "In addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." E.E.O.C. v. W&O, Inc., 213 F.3d 600, 619 (11th Cir. 2000) (quotations and citation omitted). Front pay and reinstatement are forms of equitable relief. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1162 n.31 (11th Cir. 2002). The value of equitable relief "for amount in controversy purposes is the

monetary value of the object of the litigation that would flow to the plaintiff[]" if the requested relief is granted.  Leonard v. Enter. Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002).  Here, the value of reinstatement or front pay to Ms. Brown is at least $17,950, which would represent the difference between her current earnings and her former salary at Cunningham Lindsey.[3]  Thus, adding one year of front pay pushes Ms. Brown's damages over the $75,000 jurisdictional threshold.  Ms. Brown's motion for remand is therefore due to be denied.

The Court notes that the amount in controversy is satisfied here even without considering two types of damages Ms. Brown demands in her complaint: punitive damages and emotional distress damages.  The FCRA provides that "[t]he court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."  Fla. Stat. § 760.11(5).  "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, . . . unless it is apparent to a legal certainty that such cannot be recovered."  Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) (citations and footnote omitted); see also Ryan v. State Farm Mut. Auto. Ins. Co., 934 F.2d 276, 277 (11th Cir. 1991) (holding that a complaint alleging $100,000 in punitive damages satisfied the jurisdictional

---

[3] The Court assumes here that Ms. Brown will continue to earn the same amount of money she earned in 2004.  See Richardson, 334 F. Supp. 2d at 1318 ("The same mitigation of damages analysis applies to back pay and front pay awards.").

amount in controversy because the jury could have awarded that much in punitive damages under the relevant state law).  The FCRA allows for the recovery of punitive damages up to $100,000, Fla. Stat. § 760.11(5), and nothing in Ms. Brown's Complaint or Motion for Remand indicates that she is seeking less than the maximum allowable amount of punitive damages.  Additionally, although Ms. Brown avers that she has "not been diagnosed with a psychiatric condition" and "was not forced to incur medical expenses as a result of Cunningham Lindsey's discriminatory and retaliatory conduct," (Doc. 6, Ex. 1 at ¶ 8), a plaintiff need not introduce evidence of medical treatment to recover for emotional distress and dignitary injury under the FCRA.  See Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1348-49 (11th Cir. 2000).  While Ms. Brown does not place a dollar figure on her punitive and compensatory damages claims, the Court concludes that these additional damage claims further increase the amount in controversy well above the $75,000 jurisdictional threshold.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff Barbara L. Brown's Motion for Remand  (Doc. 6) is **DENIED**.

2. Defendant's Motion to Strike Plaintiff Barbara L. Brown's Motion for Remand (Doc. 7) is **DENIED**.

3. The parties' Consent Motion and Incorporated Memorandum of Law to Extend Time to Conduct the Local Rule 3.05 Conference and File a Case Management Report (Doc. 10) is **GRANTED**.  The parties shall file their Case

Management Report no later than **May 27, 2005**.

**DONE AND ORDERED** at Jacksonville, Florida this 11th day of May, 2005.

_____
TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies:

counsel of record